UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS


DEBRA ANN PUSKEY,            )
        Plaintiff            )
             v.              )    C.A. No. 10-cv-30070-MAP
                             )
MICHAEL J. ASTRUE,           )
COMMISSIONER, SOCIAL         )
SECURITY ADMINISTRATION,     )
        Defendant            )


MEMORANDUM AND ORDER REGARDING
PLAINTIFF'S MOTION TO REVERSE OR REMAND THE DECISION OF THE
COMMISSIONER AND DEFENDANT'S MOTION TO AFFIRM THE DECISION
OF THE COMMISSIONER
(Dkt. Nos. 8 & 10)

July 6, 2011

PONSOR, D.J.

## I. INTRODUCTION

     This action seeks review of a final decision of the

Commissioner of Social Security ("Commissioner") denying

Plaintiff's applications for Social Security disability

insurance benefits.  Plaintiff applied for benefits on

December 5, 2007, alleging disability due to neck and

shoulder pain and migraine headaches since June 15, 2007.

(A.R. 7.)  Her claim was denied initially and upon

reconsideration on July 31, 2008.  Plaintiff requested an

administrative hearing, which was held on September 2, 2009, before an administrative law judge ("ALJ").  On November 3, 2009, the ALJ issued his decision, finding that Plaintiff had not been disabled within the meaning of the Social Security Act, 42 U.S.C. § 1382c, since her date of application.  (A.R. 7-15.)  On February 22, 2010, the Decision Review Board issued a notice that it had failed to review the claim during the allotted ninety-day period, thus rendering the ALJ's decision final.

Plaintiff has filed a motion to reverse or remand to the Social Security Administration for a new hearing (Dkt. No. 8), and Defendant has moved for an order affirming the decision of the Commissioner (Dkt. No. 10).  For the reasons stated below, the court will allow Defendant's motion and deny Plaintiff's motion.

## II. <u>FACTS</u>

### A.  <u>Personal Life and Work Experience</u>.

Plaintiff was thirty-seven years old when she first applied for disability benefits.  She lives with her husband and has no children.  (A.R. 23.)  She has a high school diploma.  (A.R. 170.)  Plaintiff spends her days doing housework, handling her family's finances, and caring for her two cats.  (A.R. 30.)  Plaintiff drives on a weekly basis to run errands, usually in the company of her husband.

(A.R. 23.)  Although Plaintiff used to fish and garden, she is no longer able to engage in these activities due to her pain.  (A.R. 131.)  She socializes with friends both in person and on the phone, though she often must cancel plans due to her pain.  (A.R. 131-32.)

Plaintiff's past work includes bartending, food service, and retail sales.  (A.R. 24.)  Most recently, Plaintiff worked at Big Y Supermarket in the food service department, a position that included, among other duties, skewering chicken, loading and unloading the rotisserie oven, unloading delivery trucks, and preparing foods.  (A.R. 24, 153.)  Prior to working at this position, Plaintiff was a bartender for eight years.  (A.R. 24.)

On November 30, 2006, Plaintiff sustained injuries to her upper back and neck after slipping in melted butter while removing a rack of chicken from the rotisserie oven at Big Y.  (A.R. 301.)  While still holding the fifteen-pound rack, Plaintiff caught herself before she fell to the ground.  (_Id._)  In doing so, she "twisted towards the right" and immediately felt sharp pains near her right shoulder blade.  (_Id._)  She went to the emergency room where she was diagnosed with a rhomboid strain and given pain medication.  (_Id._)

Plaintiff testified that although she attempted to

return to light-duty work after the incident, any work that she did caused her arm to become "very sore" and resulted in headaches.  (A.R. 32.)  She stated that her physician and chiropractor "agreed that removing me from work was the best option."  (A.R. 164.)  However, Plaintiff states that she is "hoping to get back to work as soon as possible."  (A.R. 171.)

B.   Plaintiff's Description of Her Impairments and Limitations.

Plaintiff testified that following the November 30, 2006, workplace incident, she has experienced chronic pain in her neck and upper back, which manifests primarily in her right shoulder and the right side of her neck.  (A.R. 26.) She also has migraines, which are so intense as to make her nauseated.  (A.R. 35.)

On December 20, 2007, Plaintiff indicated on a Social Security questionnaire that her neck and shoulder pain were constant but were relieved by ice, heat, rest, and pain medication, which caused her to feel drowsy and lightheaded. (A.R. 125-26.)  In August 2008, Plaintiff stated that her pain was increasing and spreading to the left shoulder and left neck. (A.R. 145.)

With respect to her migraines, Plaintiff testified that she gets migraines about twice a week and that they can last for a period of three-to-six days.  (A.R. 27, 135.)  They

4

usually occur after "overuse" of her arm or neck, and she rated their severity without medication as eight on a pain scale of ten and with medication as five. (A.R. 27-28.) Plaintiff stated that the migraines result in "brief periods of blackness in [her] right eye" and that she experiences "shooting pains around my head and into my eye."[1] (A.R. 135.)

Regarding her limitations, Plaintiff stated that she can sit comfortably for ninety minutes and can stand for about thirty minutes. (A.R. 30.) She testified that "[w]alking isn't too bad as long as it's not for long distances." (A.R. 30.) She is unable to lift more than ten pounds. (A.R. 128.) She can lift a gallon of milk, although it feels "a little heavy," and can handle small objects with her hands and fingers. (A.R. 30.) She experiences numbness and tremors in her right hand and fingers, which, because she is right handed, "make[s] it very difficult to function." (A.R. 136.) Although Plaintiff did not list it as one of her impairments, she testified that she has carpal tunnel syndrome and that it inhibits her ability to use the computer because her fingers

---

[1] Plaintiff also testified that she is depressed due to "the lack of being able to be physically active." (A.R. 28.) However, because Plaintiff's arguments on appeal focus solely on her physical impairments, the court will limit its recitation of the facts to the evidence relating to those impairments.

5

become numb, and she feels pain up to her elbows.[2]  (A.R. 30-31.)  Plaintiff stated that she has difficulties washing her hair, cooking in the oven, vacuuming, sweeping, mopping, and doing laundry.  (A.R. 128.)  She cannot grocery shop without her husband because she is unable to load and unload their truck.  (A.R. 29.)

Regarding her capacity to work, Plaintiff stated that she cannot work for more than two hours without resting and, if she works constantly for a full two hours, she must "stop for the day."  (A.R. 128, 141.)  By the afternoon, Plaintiff can do no housework because the pain in her neck and shoulder is so great and "[s]ome days, [she] can't do much at all."  (A.R. 127.)  Plaintiff stated that if she were employed on a full-time basis, she would likely be unable to work half of the time.  (A.R. 35.)

In August 2009, Plaintiff's husband, John Puskey, submitted an affidavit in which he stated that Plaintiff "used to be always on the go, non-stop, always busy."  (A.R. 177.)  Now, due to her migraines and neck and shoulder pain, "[t]here are days where there is minimal to no activity," and they often have to cancel plans "because she has a

---

[2] When questioned about any treatment she received for her carpal tunnel syndrome, Plaintiff testified that she was forced to stop seeking treatment because she was unable to afford it, explaining that the insurance she receives from her husband's employer has a $2000.00 annual deductible. (A.R. 32.)

migraine and her neck is killing her." (<u>Id.</u>) He stated
that he "can see the pain on her face." (<u>Id.</u>)

C. <u>Medical History</u>.

    1. <u>Family Medicine Associates</u>.

Plaintiff receives primary care from Family Medicine
Associates, where she has been seen by Dr. George Reynolds
but is usually seen by his associate, nurse practitioner
David Allen. Mr. Allen first examined Plaintiff on December
12, 2006, about two weeks after her accident. Plaintiff
stated to Mr. Allen that after the workplace injury, she was
unable to return to work because of her pain, which she
experienced when lifting, reaching up and behind her back,
and sleeping. (A.R. 185.) Mr. Allen advised Plaintiff that
she could return to light work with "restricted lifting
duty" and opined that she would eventually resume her prior
work at full duty. (A.R. 186.)

On January 12, 2007, Mr. Allen's notes indicate that
Plaintiff's range of motion in her shoulder was normal and
that Plaintiff stated that "her shoulder is now pain free."
(A.R. 514.) After reviewing notes from Plaintiff's
chiropractor and physical therapist, he recommended that she
return to work on a limited basis for two weeks and after
then to continue working with no restrictions. (<u>Id.</u>)

On January 16, 2007, Plaintiff reported that she had
visited the emergency room over the weekend due to a

headache.  (A.R. 189, 483.)  Two days later, on January 18, Mr. Allen saw Plaintiff again and noted that Plaintiff's headaches continued but with less intensity.  (A.R. 188.)

On March 30, 2007, Dr. Reynolds excused Plaintiff from work for four weeks.  (A.R. 508.)  On June 1, 2007, he excused her from work for three days with a notation that she could return on June 4 for light duty for no more than four hours daily.  (A.R. 503.)

On August 15, 2007, Mr. Allen completed a medical certification statement for Big Y in which he opined that Plaintiff was presently unable to perform work of any kind and no further prognosis could be made without orthopedic consultation.  (A.R. 510-11.)  Plaintiff next saw Mr. Allen nearly a year later on March 18, 2008, at which point she began to see him on a regular basis until August 2008, complaining of chronic neck and shoulder pain and headaches. (A.R. 603-638.)

On August 19, 2009, Mr. Allen sent a letter to Plaintiff's attorney, which was cosigned by Dr. Bashir Bashiruddin and which detailed Plaintiff's medical history since her first visit to Family Medicine Associates in December 2006.  (A.R. 638-40.)  Mr. Allen concluded:

> I certainly feel very confident saying that this is a chronic injury.  I certainly would not recommend any kind of occupation that required any kind of repetitive motion of her shoulder or repetitive motion of her neck.  It is possible in

the future she may be able to pursue some
sedentary occupation, but at this time I think
anything requiring repetitive, heavy physical
effort would be absolutely counterproductive.

(A.R. 640.)

The final report in Plaintiff's medical record is from
a consultation that she underwent on March 25, 2009, with
Dr. Bashiruddin. (A.R. 642-644.) Dr. Bashiruddin notes
that Plaintiff is an obese woman with a history of
myofascial pain syndrome[3] and migraine headaches. He
stated, "[s]he was encouraged on gradually increasing her
physical activity and maybe trying another session of
physical therapy for cervical range of motion and muscle
strengthening. She is to follow up with me on an as-needed
basis . . . ." (A.R. 644.)

    2.  Hampshire Orthopedics and Sports Medicine.

On December 14, 2007, one year after the workplace
incident, Plaintiff was examined by Dr. Maurice Bernaiche of
Hampshire Orthopedics and Sports Medicine who opined that
Plaintiff's symptoms appeared to be near her rotator cuff
and ordered an MRI. (A.R. 551.) One month later, on
January 29, 2008, Dr. Bernaiche noted that a cervical
epidural corticosteroid injection had failed and that
Plaintiff was reporting that she was now in more pain.
(A.R. 580.) He referred Plaintiff to Dr. Dennis Oh at Bay

_____

    [3] A rheumatic syndrome similar to fibromyalgia.

9

State Medical Center for a consultation concerning spine surgery. (<u>Id.</u>) Dr. Oh subsequently opined that Plaintiff's symptoms were inconsistent with cervical radiculopathy and, thus, surgery would be inappropriate. (A.R. 594.) He further opined that her headaches were likely caused by tension. (<u>Id.</u>)

    3.   <u>Dr. Jeffrey Soley</u>.

Chiropractor Jeffrey Soley of Westfield Family and Sports Chiropractic treated Plaintiff from January 5, 2007, through July 6, 2007. (A.R. 310-450.) At the first visit, Dr. Soley indicated that Plaintiff was complaining of "relatively constant" shoulder and cervical pain due to a work-related injury. (A.R. 183.) Dr. Soley also stated that Plaintiff reported numbness and tingling in her right hand, which he had treated her for on a previous visit on November 9, 2006. (<u>Id.</u>) Dr. Soley recommended chiropractic adjustments twice a week for three-to-four weeks. He noted that after he manipulated her vertebrae on this visit, Plaintiff "reported feeling 'better already.'" (A.R. 184.)

Ultimately, Dr. Soley diagnosed Plaintiff with cervical neuritis, which he described as "nerve root irritation" and stated expressly that her symptoms were not indicative of an injury to her shoulder. (A.R. 310.) He also stated that she had Cervical Intervertebral Disc Syndrome, from which she would need to recover in order to tolerate activity,

although he did not anticipate full recovery.  (A.R. 311-12.)  By mid-June 2007, Dr. Soley noted that Plaintiff reported increased pain due to physical therapy and longer work hours.  He wrote, "Dr. Reynolds has again removed from work place until further notice, a move [with] which I concur."  (A.R. 321.)

When Dr. Soley examined Plaintiff for follow-up care on August 29, 2007, Plaintiff reported that the severity of her symptoms had decreased and that she was no longer experiencing constant pain.  (A.R. 460.)  Nonetheless, Plaintiff also reported that she remained unable to work.  (Id.)  Dr. Soley's final assessment was that no additional treatment was needed, and he discharged Plaintiff from his care.  (A.R. 465.)

4.  Pioneer Spine and Sports Physicians.

On March 12, 2007, Plaintiff was examined by Dr. Paul Azimov at Pioneer Spine and Sports Physicians ("PSSP").  She described her pain as "aching and burning" and at six on a pain scale of ten.  (A.R. 244.)  She reported that her pain increased both with activities and with lying down and that the painkiller Percocet provided moderate relief.  (Id.)  Dr. Azimov described Plaintiff as "a pleasant, well-developed woman who appears in no apparent distress.  She goes from a sitting to standing position without difficulty."  (Id.)  After finding mild herniation in her

11

cervical spine, he prescribed Prednisone and recommended that she return to light-duty work but not lift more than ten pounds with her right arm.  (A.R. 245-47.)

On March 22, 2007, Plaintiff was seen for follow-up care by Dr. Rae Davis, who reported that Plaintiff had to leave work early the prior day due to neck pain, which Plaintiff rated as six on a scale of ten.  (A.R. 242.)  She recommended that Plaintiff continue light-duty work but refrain from lifting more than ten pounds.  (A.R. 243.)

On March 26, 2007, Plaintiff was seen by Dr. Michael Woods at PSSP for cervical pain and headaches as well as numbness and tingling in her right fingers.  (A.R. 224.)  Plaintiff stated that she had difficulty standing for more than two hours, reaching overhead, bending, lifting, and gripping a jar and rated her pain level as varying between four and ten on a scale of ten.  (A.R. 239.)  Dr. Woods noted that Plaintiff was in no acute distress and that all sensory studies and responses were normal.  He recommended that Plaintiff return to work with the following restrictions: wear a right elbow stabilizing brace; no lifting or carrying more than ten pounds repetitively and twenty pounds occasionally; and no pushing or pulling more than thirty pounds.  (A.R. 240.)  He further indicated that she might benefit from trigger-point injections.  (A.R. 225.)

At a follow-up visit on April 24, 2007, with Dr. Ronald Paasch, Plaintiff stated that she had attempted to return to work but "was taken out of work by her primary care physician" because of increased pain.  (A.R. 236.)  At the visit, Plaintiff underwent three trigger-point injections. Dr. Paasch recommended that Plaintiff return to work but avoid lifting more than ten pounds.  (A.R. 237.)

At a follow-up visit in May, 2007, Plaintiff refused additional trigger point injections, which she reported as not having had any effect.  (A.R. 221.)  She was recommended to return to work on a limited basis for three weeks at which time she could return full-time.  (A.R. 232.)

At a follow-up visit on June 8, 2007, Plaintiff was examined by Dr. David Bowers.  Plaintiff presented with pain in her right neck, shoulder, and elbow and tingling in her right hand.  Dr. Bowers opined that Plaintiff's pain was likely exacerbated by specific stretches she had done in physical therapy the prior week and further opined that her symptoms were consistent with myofascial pain.  (A.R. 227.) He recommended that she "refrain from light duties for the next 5 days."  (A.R. 228.)

    5.  <u>Physical Therapists</u>.

Plaintiff received physical therapy from Sofia Zanzarella from December 6, 2006, through January 11, 2007. On her final visit, Plaintiff stated that she had

experienced no pain for more than a week and was "confident for full 8 hr. shift." (A.R. 187.) Ms. Zanzarella recommended that Plaintiff return to work for eight-hour shifts but no more than twenty hours a week for two weeks, at which time she could return to full-time work. (Id.) Plaintiff was discharged from physical therapy on January 18 because her "rehabilitation potential has been met." (A.R. 200.) Ms. Zanzarella indicated that Plaintiff had achieved all short-term goals and some long-term goals. (Id.)

On March 6, 2007, Plaintiff began another round of physical therapy with Pioneer Therapy Services. She was seen regularly through June 12, 2007. The records indicate that her pain, which she rated three on a scale of ten, flared up occasionally (A.R. 277, 278, 279, 284, 290), and, at other times, subsided (A.R. 282, 283, 285, 286, 289).

6. Miscellaneous Records.

On January 12, 2006, nearly a year prior to her November 2006 accident at the Big Y, Plaintiff was seen by Dr. Christopher Comey at New England Neurosurgical Associates for intermittent mid-lumbar pain and pain in her left buttock. Dr. Comey noted some degenerative changes in her spine and a "small" disk herniation but recommended no further intervention. (A.R. 180.)

On January 31, 2007, Plaintiff was examined by Dr. Armand Aliotta, who reported that Plaintiff was experiencing

fainting spells and headaches.  (A.R. 222.)  He noted that
Plaintiff has "persistent discomfort in her neck . . . along
with some pulled muscles in her shoulders."  (<u>Id.</u>)  His
examination revealed "a well-developed, well-nourished
female . . . . Range of motion of the shoulders, elbows and
wrists is normal."  (<u>Id.</u>)  Dr. Aliotta ordered an MRI, which
does not appear to be in the record but which is referenced
in another physician's report as "normal."  (A.R. 224.)

On August 7, 2007, Plaintiff was seen by Dr. John
Corsetti at New England Orthopedic Surgeons where an
examination revealed a slightly restricted range of motion
in her neck and full and painless range of motion in her
shoulder.  (A.R. 308.)  Dr. Corsetti stated that, given all
of the treatment that Plaintiff had undergone to date, "[a]t
this point, I have nothing more to offer her."  (A.R. 309.)

On September 19, 2007, Plaintiff presented to the
emergency room complaining of shooting pains in her neck and
an inability to move her neck.  (A.R. 476.)  She was advised
to use moist heat and given prescriptions for Valium,
Vicodin, and ibuprofen.  (A.R. 479.)

D.   <u>Medical Evaluations and RFC Assessments</u>.

1.   <u>Dr. David M. Grygier</u>.

In connection with Plaintiff's workers' compensation
application, Dr. David Grygier examined Plaintiff and
reviewed her medical records on June 29, 2007.  (A.R. 298-

307.) He stated that Plaintiff's "complaints of pain seemed well out of proportion to the injury that she claims to have suffered on November 30, 2006," and found that "she demonstrates an extremely exaggerated pain response to the lightest palpation" near her shoulder blade making it impossible to determine how much pain she "is really experiencing." (A.R. 306-07.) He noted inconsistencies concerning the date of onset of her pain between Plaintiff's statement of her medical history and her medical records and determined that the record lacked any objective evidence of permanent loss of function. (A.R. 307.)

    2.  <u>Dr. Elaine Hom</u>.

Dr. Elaine Hom, a state agency physician, completed a Physical Residual Functional Capacity Assessment ("RFC") based on a review of Plaintiff's medical records on January 9, 2008. (A.R. 554-61.) Dr. Hom found Plaintiff's complaints of the severity of her symptoms to be inconsistent with the medical records and thus found her only partially credible. (A.R. 559.) She assessed Plaintiff as able to: occasionally lift twenty pounds; frequently lift or carry ten pounds; stand or walk for about six hours in an eight-hour workday; push, pull, or reach to a limited degree; occasionally climb, balance, stoop, kneel, crouch, and crawl. (A.R. 55-557.)

    3.  <u>Dr. Shanker Gupta</u>.

Dr. Shanker Gupta completed an RFC assessment on July 28, 2008, concluding that Plaintiff suffered from the following severe impairments: degenerative disc disease of the cervical spine, degenerative disc disease of the lumbar spine, and mild impingement of the right shoulder.  (A.R. 613.)  He stated that the impairments were not, however, equivalent to a listing-level impairment.  (Id.)

Dr. Gupta opined that Plaintiff could frequently lift and carry up to ten pounds and occasionally lift and carry up to twenty pounds.  (A.R. 614.)  He found that she could sit and stand for two hours without interruption and walk for one hour without interruption, and that she was able to perform all of these activities for six hours in an average eight-hour workday.  (A.R. 615.)  He opined that Plaintiff had some restrictions on reaching, pushing, and pulling and could occasionally climb stairs and ramps, balance, stoop, kneel, crouch, and crawl.  (A.R. 616-17.)

    4.   Nurse Practitioner David Allen.

Plaintiff's treating nurse practitioner completed an RFC assessment on August 28, 2008.  He found that Plaintiff could lift or carry ten pounds occasionally but never more than ten pounds.  (A.R. 621.)  He found that Plaintiff could sit, stand, or walk for only one hour without interruption and, though she could sit for up to four hours, she could stand or walk for no more than two hours during the course

17

of an eight-hour workday.  (Id.)  With respect to the use of
Plaintiff's hands, he determined that Plaintiff could never
reach overhead, push, or pull and could occasionally reach,
handle, finger, and feel.  (A.R. 623.)  With respect to her
postural abilities, he determined that she could never climb
ladders or crawl, could occasionally stoop, kneel, or
crouch, and could frequently climb stairs and balance.
(A.R. 624.)  Finally, he opined that she could never
tolerate extreme cold and could occasionally tolerate
unprotected heights, moving mechanical parts, extreme heat,
and vibrations.  (A.R. 625.)

E.    The ALJ's Findings.

    The Social Security Administration's disability
determination is subject to a five-step process under 20
C.F.R. § 404.1520.  At Step One, the ALJ determined that
Plaintiff had not engaged in substantial gainful activity
since her application date of June 15, 2007.  (A.R. 9.)  At
Step Two, the ALJ determined that Plaintiff had the
following severe medical impairments: degenerative disc
disease and an affective disorder.  (Id.)  At Step Three,
the ALJ found that Plaintiff's impairments did not medically
equal the criteria of the listed impairments in 20 C.F.R.
404, Subpart P, App. 1.  (Id.)  At Step Four, the ALJ

18

determined that Plaintiff had the RFC to perform "light

work"[4] with the following limitations:

> simple unskilled tasks; no heights, ladders,
> ropes, scaffolding; no overhead lifting [,]
> reaching; no extreme cold/vibration; occasional
> ramps, stairs, stooping, crouching, crawling,
> kneeling; no greater than frequent grasping,
> pushing, twisting, with hands bilaterally.

(A.R. 10.)  Finally, at Step Five, the ALJ found that

Plaintiff was unable to perform any past relevant work but

could perform the requirements of such representative jobs

as a recreation attendant, office helper, and companion.

(A.R. 14.)

### III. <u>DISCUSSION</u>

The arguments that Plaintiff has raised on appeal are

essentially an attack on the ALJ's RFC assessment and are

best addressed as such.[5]

A.  <u>Standard of Review.</u>

---

[4] According to the Social Security regulations, "light work" involves lifting no more than twenty pounds with frequent lifting or carrying of objects weighing up to ten pounds.  20 C.F.R. §§ 404.1567(b), 416.967(b).  Light work also includes jobs that require significant walking or standing, or involve sitting most of the time with some pushing or pulling of arm or leg controls.  <u>Id.</u>

[5] Plaintiff specifically argues that the ALJ failed to identify her chronic neck and shoulder pain and her migraines as severe impairments, failed to consider her own statements concerning her limitations, and improperly weighed the opinions of her treating physicians.  All of these arguments are, in substance, addressed below.

Judicial review of a final decision of the Commissioner is limited to whether substantial evidence supports the Commissioner's decision, and whether the Commissioner applied the correct legal standards. <u>Seavey v. Barnhart</u>, 276 F.3d 1, 9 (1st Cir. 2001). The responsibility for weighing conflicting evidence and resolving issues of credibility belongs to the Commissioner and his designee, the administrative law judge. <u>See</u> <u>id.</u> at 10. The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is such evidence "as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971). Accordingly, the court must affirm the Commissioner's findings "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." <u>Rodriguez v. Sec'y of Health & Human Servs.</u>, 647 F.2d 218, 222 (1st Cir. 1981). This is true "even if the record arguably could justify a different conclusion." <u>Rodriguez Pagan v. Sec'y of Health & Human Servs.</u>, 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).

B.   <u>The ALJ's RFC Assessment</u>.

Plaintiff argues that the ALJ ignored her statements and her treating providers' opinions in assessing her RFC and, thus, failed to include in his analysis the physical limitations arising out of her migraines and chronic pain.[6] Unfortunately for Plaintiff, the record does not support this argument.

As to Plaintiff's treating sources, the ALJ included nearly all of Mr. Allen's recommended limitations in his RFC assessment and in the hypothetical that he posed to the Vocational Expert ("VE") at the hearing. In fact, it is apparent that the ALJ not only considered Mr. Allen's recommendations in his RFC assessment but relied on them.

As noted above, the ALJ limited Plaintiff to "light work" involving:

> simple unskilled tasks; no heights, ladders,
> ropes, scaffolding; no overhead lifting [,]
> reaching; no extreme cold/vibration; occasional
> ramps, stairs, stooping, crouching, crawling,

---

[6] Plaintiff makes much of the ALJ's failure to identify by name her chronic pain and migraines as severe impairments at Step Two. However, the ALJ's analysis of Plaintiff's degenerative disc disease necessarily encompassed neck pain. More importantly, the record confirms that the ALJ considered the limitations resulting from Plaintiff's chronic pain and migraines in his final RFC assessment. Thus, the absence of any explicit mention of them in the list of severe impairments is of no moment.

kneeling; no greater than frequent grasping,
pushing, twisting, with hands bilaterally.

(A.R. 10.)  This RFC, and the nearly identical hypothetical

posed to the VE at the hearing,[7] is consistent with nearly

all of Mr. Allen's recommended restrictions, including that

Plaintiff is unable to reach overhead, push, or pull but is

able occasionally to reach, handle, finger, and feel (A.R.

623); that Plaintiff can occasionally stoop, kneel, or

crouch, and can frequently climb stairs and balance (A.R.

624); and that Plaintiff cannot tolerate extreme cold (A.R.

625).  Although Plaintiff is correct that the ALJ's RFC

assessment differs from Mr. Allen's in that the ALJ

determined that Plaintiff could <u>frequently</u> use her hands

whereas Mr. Allen determined she could only <u>occasionally</u> use

her hands, Plaintiff herself testified that she is able to

handle small objects with her hands and fingers.  (A.R. 30.)

Plaintiff takes particular issue with the ALJ's alleged

failure to account for the recommendation by Mr. Allen and

Dr. Bashiruddin that she refrain from an "occupation that

_____

[7] The ALJ's hypothetical assumed light, unskilled work;
no ladders or scaffolding; no overhead reaching or lifting;
no more than incidental exposure to extreme cold or
vibrations; no more than occasional use of ramps or stairs,
or stooping, crouching, crawling, or kneeling; and no more
than frequent grasping, pinching, or twisting with the
hands.  (A.R. 38.)

required any kind of repetitive motion of her shoulder or repetitive motion of her neck." (A.R. 640.) While it is true that the ALJ did not specifically include these limitations in the hypothetical that he posed to the VE, none of the jobs identified by the VE require any repetitive motion. In fact, the Dictionary of Occupational Titles describes the position of recreation facility attendant as primarily a desk job with the additional requirement of occasionally handing out golf or tennis balls, DOT 341.367-010; the position of office helper as primarily a desk job involving the use of equipment such as a letter opener and a stamp machine, DOT 239.567-010; and companion as including such activities as reading aloud and preparing meals for elderly or convalescing persons, DOT 309.677-010. The record contains substantial support for the ALJ's conclusion that these activities are within the ability of Plaintiff.

With respect to Plaintiff's own statements, the ALJ expressly found that Plaintiff's statements concerning the severity of her impairments were inconsistent with the medical record. (A.R. 13.) Notwithstanding Plaintiff's diagnoses of myofascial pain syndrome, cervical neuritis, and degenerative disc disease, the objective evidence, the ALJ found, demonstrated that the manifestations of her diagnoses were not sufficiently severe or debilitating as to

render her disabled.  (See, e.g., A.R. 308 (painless range
of motion in shoulder); A.R. 222 (normal range of motion in
shoulder, elbow, and wrist).)  Even Mr. Allen and Dr.
Bashiruddin did not suggest that Plaintiff's condition was
disabling but instead opined that "anything requiring
repetitive, heavy physical effort would be absolutely
counterproductive."  (A.R. 640.)  Thus, the ALJ properly did
not give controlling weight to Plaintiff's statements in his
determination of disability.  See Avery v. Sec'y of HHS, 797
F.2d 19, 21 (1st Cir. 1986) ("[S]o long as statements of a
claimant or his doctor are not inconsistent with the
objective findings, they could, if found credible by the
adjudicator, permit a finding of disability where the
medical findings alone would not.").

## IV. CONCLUSION

This case presents the court with a familiar picture.
Plaintiff suffers some degree of significant impairment,
including recurrent pain.  The record contains some evidence
that these impairments render Plaintiff disabled.  It also,
however, contains substantial evidence that Plaintiff's
impairments, while significant, are not legally disabling
for purposes of the Social Security Act.  Of course, if

Plaintiff's condition deteriorates, she may file a new application for benefits.

Under these circumstances, the court is constrained to affirm the decision of the Commissioner.  Plaintiff's Motion to Reverse or Remand (Dkt. No. 8) is therefore DENIED, and the Commissioner's Motion to Affirm the Decision of the Commissioner (Dkt. No. 10) is therefore ALLOWED.  The clerk will enter judgment for Defendant.  The case may now be closed.

It is So Ordered.

/s/ Michael A. Ponsor
MICHAEL A. PONSOR
U. S. District Judge